## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **JASON COOK**, an Individual residing in the City of Westbrook, County of Cumberland, and State of Maine, <br><br> Plaintiff, <br><br> v. <br><br> **MAINEHEALTH,** a Maine Nonprofit Corporation doing business in the City of Portland and State of Maine, <br><br> and <br><br> **NORDX,** a Maine Nonprofit Corporation doing business in the City of Portland and State of Maine, <br><br> Defendant | Case No._____ |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jason Cook, by and through undersigned counsel, hereby complains against Defendants MaineHealth and NorDx as follows:

### INTRODUCTION

1. This case arises under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*; the Federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Maine Family Medical Leave Requirements Law ("Maine FMLA"), 26 M.R.S. § 843 *et seq.*; the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*; and the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*

1

2. This case challenges the Defendants': (1) unlawful discrimination against Plaintiff on the basis of his former military service in violation of USERRA; (2) unlawful interference with Plaintiff's rights under the FMLA and Maine FMLA; (3) unlawful disability discrimination against Plaintiff in violation of the MHRA; and (4) unlawful interference with Plaintiff's right to collect short-term disability benefits under ERISA.

## THE PARTIES

3. Plaintiff Jason Cook ("Mr. Cook") is an individual residing in the City of Westbrook, County of Cumberland, and State of Maine.

4. Defendant NorDx is a wholly owned subsidiary and/or division of Defendant MaineHealth, doing business in Maine and operating human specimen laboratories in various locations throughout Maine, including Maine Medical Center ("MMC") in Portland.

5. Both MaineHealth and NorDx are Maine non-profit corporations duly authorized to do business in the State of Maine.

6. Plaintiff worked for NorDx in the laboratory at MMC from May 12, 2014 through the date of his termination on July 16, 2015.

7. Throughout his employment at NorDx, Plaintiff was paid by MaineHealth.

8. MaineHealth offers employee benefits to each of its wholly-owned subsidiaries through what it describes as "eligible employer groups," which are broken down by divisions or "single member organizations" of MaineHealth; these divisions include NorDx, Maine Medical Partners, and Maine Medical Center, among others.

9. MaineHealth maintains a master list or spreadsheet of all employees in its organization, broken down by subsidiaries, departments, or divisions of MaineHealth.

10. MaineHealth refers to its employees working at the NorDx lab in Biddeford as part of MaineHealth's "SMMC Spec Mgt." department.

11. MaineHealth's master list refers to employees working at the NorDx lab inside MMC as part of MaineHealth's "Bramhall Spec Mgt." department.

12. Upon information and belief, MaineHealth includes individuals employed by its subsidiary Maine Medical Partners on its master list of employees.

13. Maine Medical Partners ("MMP") is a department of Maine Medical Center and a wholly-owned subsidiary of MaineHealth.

14. Plaintiff Jason Cook worked for MMP briefly after NorDx terminated him.

15. MMP fired Plaintiff in November of 2015.

16. When Plaintiff worked for MMP, his paycheck came from MaineHealth.

17. Based on the foregoing, MaineHealth is the actual employer of individuals working at both NorDx and MMP.

18. Alternatively, MaineHealth, NorDx, MMC, and MMP are all an integrated enterprise due to interrelated business operations; common ownership, management, and oversight; and top-level, centralized control of labor relations.

19. Defendants MaineHealth and NorDx have each employed more than 500 individuals in each of 20 or more calendar weeks in the current and preceding calendar years.

## JURISDICTION AND VENUE

20. Prior to filing this Complaint, Mr. Cook filed a charge of discrimination with the Maine Human Rights Commission ("MHRC") and/or the Equal Employment Opportunity Commission ("EEOC").

21.     Mr. Cook received a letter dismissing his claim with the MHRC on or about March 16, 2017, advising him to file a lawsuit within either 90 days from the date of the letter or two years from the date of alleged unlawful discrimination, whichever was later.

22.     MaineHealth subjected Plaintiff to a continuing violation of the MHRA based on disability discrimination, starting with his employment at NorDx and continuing through his employment with and termination from MMP.

23.     MaineHealth discriminated against Plaintiff in violation of the MHRA within 2 years of the date of filing this Complaint.

24.     Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of Cumberland and State of Maine.

25.     The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4301 *et seq*.

## STATEMENT OF FACTS

26.     Defendants employed Plaintiff as a Phlebotomist I in the Specimen Management Department at MMC from approximately May 12, 2014 to the date of his termination on July 16, 2015.

27.     Plaintiff Jason Cook served in the United States Army from 1992 through 2007 in the DC01/504th Parachute Infantry Regiment, as the Training NCO in the DC01/506th Infantry and as a Reserve Drill Instructor in the BC02/304th Training Battalion.

28.     Mr. Cook served in the United States and South Korea; he also volunteered to serve in Iraq and Afghanistan as a Ranger Qualified Infantryman and led his own platoon.

29.     During an airborne training jump while he was on active duty, Mr. Cook's parachute canopy malfunctioned in a collision and he broke his back upon landing.

30. Mr. Cook spent 8 months recovering from his back injury at Fort Bragg Army Hospital in North Carolina.

31. Physically, Mr. Cook continues to suffer the consequences of this injury, which continues to cause him pain and bone spurs in both feet, as well as osteoarthritis in his hips, knees, and lower back.

32. Plaintiff also suffers from ongoing mental disabilities such as Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

33. Mr. Cook's PTSD arises from a traumatic incident called the "Green Ramp Disaster," which was a 1994 mid-air and subsequent ground collision between two aircraft preparing for training jumps at Pope Airforce base in North Carolina.  Many of the 500 paratroopers present on the green ramp that day were badly injured and 24 died.  Mr. Cook survived because he was buried beneath a pile of bodies who had been badly burned or injured during the crash.

34. Mr. Cook takes several medications for his physical and mental health conditions.

35. When Plaintiff interviewed with Defendants in April of 2014, he disclosed that he was a disabled veteran who had worked as a medic in combat.

36. Mr. Cook has a record of a disability that appears on the face of his NorDx Interview Questionnaire, which states that Mr. Cook was a "disabled veteran," who "went to VA for help w/ career choice."

37. Mr. Cook also has a record of 90% disability from the VA, which NorDx never acknowledged or asked to see.

38. Effective August 31, 2014, Mr. Cook completed his three-month introductory period of employment at NorDx and became eligible for benefits through MaineHealth.

5

39. On Friday, September 12, 2014, Mr. Cook's supervisor informed him via email that Plaintiff had reached his "max call out" during his 6-month introductory period.

40. Defendants maintain a "Call Out Procedure for PSC and Outreach Phlebotomists," which is an inflexible leave policy that imposes discipline on employees who: (A) are tardy more than 5 times in a rolling year; (B) have more than 5 unscheduled absences within a rolling year; or (C) have more than 5 unscheduled early departures within a rolling year.

41. NorDx applied the above disciplinary policy to Mr. Cook without regard for whether his absences, tardiness, or early departures were the result of his known disability, in violation of the MHRA.

42. On November 14, 2014, Mr. Cook emailed MaineHealth/NorDx HR partner Rachel Roy (hereinafter referred to as "HR") regarding his number of "call outs." Mr. Cook explained as follows:

> "I am a disabled veteran and I take medications to help with my sleep, PTSD, and control of my adrenal glands over producing adrenaline. Recently I had to call out on a Saturday because my PCP at the VA changed up my sleep meds. I was to take 200mg of Queptiapine, 100mg of Trazadone, 1mg of Clonazepam, 20mg of Cyclobenzaprine, 50mg of Amytripatline, 10/325mg of Hydrocodone, and a 20mg Oxycontin. The mixture of these meds really put me in a deep sleep, I woke up Sat morning and I was light headed, nauseous, my legs were very weak, and I had a really bad headache. I slept right through my alarm, and the Lab calling me twice. I have since then stopped taking the oxy, and quieptiapine."

43. Mr. Cook further explained that: "I don't have any limitations from the VA saying I can't work, and when I am here, if I am in any pain from my injuries, I take motrin and Tylenol. The extent of my injuries are, I broke my back in 3 places, I have a spinal fusion, my L5 to my sacrum, a fractured sacroiliac joint, left hip dislocation, and being diagnosed with a severe case of PTSD. I do take the meds I need to take for my PTSD at work, but they don't effect my working ability."

6

44. Rather than engaging in the interactive process with Mr. Cook to determine if he needed an accommodation at that time, HR responded to Mr. Cook's email by stating that "all employees are expected to follow the Standards of Conduct policy which includes attendance."

45. HR further stated: "If your absences are related to a medical condition, there is a process HR and Employee Health has in place that [sic] to work with the employee and their provider."

46. However, instead of offering to "work with" Mr. Cook on his medically-related absences, HR told him: "In regards to the information you shared about medical diagnosis and prescription medications, in the future, please share that information with Employee Health only. This type of information should not be shared with your supervisors and Human Resources."

47. When HR ignored Mr. Cook's complaint of absences related to a medical condition, and took no steps to engage in the purported "process" that HR had in place, Defendants treated Plaintiff differently than other disabled employees with medical conditions which were not service-related.

48. Because Mr. Cook suffered from PTSD related to military service, NorDx ignored his disability that had already been diagnosed by the VA, evidencing a discriminatory animus toward individuals who serve in the military.

49. Although Mr. Cook was eligible for short-term disability ("STD") benefits through MaineHealth, HR never counseled him to apply for STD after learning about his various medical conditions.

50. On November 25, 2014, Mr. Cook's supervisor wrote to him that: "You wanted to know if it was ok to come down before the 5am sweep was complete to take a break [sic] get meds if needed, a coffee, [sic], then go back up to finish sweep. My response was no if you have

7

labels in hand you need to complete the work load and if not able to do so you need to call dispatch let them know you need to come down and talk to a supervisor.  We can't delay patient care."

51.     In refusing to let Mr. Cook take a break when he was in pain, NorDx discriminated against him on the basis of his known disability.

52.     This email from November 25, 2014 is another example of NorDx refusing to recognize Mr. Cook's service-related disability as being a valid medical condition that required accommodation, again evidencing a discriminatory animus toward service members.

53.     If Mr. Cook was unable to complete his work without taking a break to get pain medication, and NorDx could not accommodate his request, the appropriate course under NorDx's own policies and procedures was to refer him to Unum to apply for STD benefits, which NorDx failed to do.

54.     Also in the November 25, 2014 email, Mr. Cook's supervisor "addressed coworker concerns with you disappearing from the floors or telling your coworkers you needed to leave the floor to go to your car to get meds."

55.     NorDx informed Mr. Cook that his coworkers complained that he appeared to be under the influence at work; after Mr. Cook again explained his disabilities and the medications he takes for them, he asked to be sent to Employee Health for evaluation but NorDx refused.

56.     On December 23, 2014, Plaintiff's supervisor emailed HR that Mr. Cook had "productivity gaps," and his supervisor discussed "proper break times" with Plaintiff.

57.     Plaintiff's supervisor also told HR that: "Jason has made comments to staff that he is a VA and nobody can touch him he will sue NorDx.  He will take his time drink his coffee etc.  These are staff complaints.  We discussed the importance of team work and how these

conversations spread negativity and it will not be tolerated."

58. NorDx did not allow Mr. Cook an opportunity to respond to the above "staff comments" about his veteran status, even though the comments from staff revealed a clear discriminatory bias toward Mr. Cook because "he is a VA" and he "takes his time" completing his work. In refusing to hear Mr. Cook's side of the story, Defendants again discriminated against him on the basis of not only his disability, but also his military service.

59. On February 10, 2015, NorDx took adverse action against Mr. Cook by writing him up with corrective actions not once but twice on the same day.

60. The first corrective action on February 10, 2015 was for excessive late arrivals or absenteeism, even though Mr. Cook had already explained that some of those attendance issues were medically-related.

61. In addition, Mr. Cook explained that one absence was should have been attributed to a different employee, not him, but NorDx ignored this explanation.

62. The second corrective action on February 10, 2015 was for "productivity, performance and communication issues with co-workers."

63. Mr. Cook wrote on this corrective action/written warning that NorDx's actions were "discriminatory," and tried to explain that some of the information was inaccurate.

64. On February 11, 2015, HR wrote a letter to Mr. Cook stating that: "you indicated that your behavior may be a result of the prescription medication you take and you may have a need for a possible accommodation that would allow you to perform the essential functions of your job."

65. HR gave Mr. Cook two weeks to have his physician answer questions about his medical condition and submit them to Employee Health.

66. Mr. Cook did not need to submit to a medical examination in order to obtain an accommodation for his disability, because he already had a record of 90% disability with the VA; NorDx's refusal to consider Mr. Cook's VA record of a disability evidences discriminatory animus toward veterans.

67. Plaintiff's disability was documented, known, and should have been obvious to Defendants, obviating the need for a medical examination.

68. Employee Health did not receive information from Mr. Cook's provider within the 2-week deadline given to Plaintiff, so HR wrote him another letter on March 2, 2015 stating that a medical examination was a "necessary part of the interactive process."

69. Even though Mr. Cook had an established VA record of 90% disability, HR told him: "Unless you and your medical provider respond to this letter, NorDx will not have adequate information to assess your potential needs or your request for a reasonable accommodation."

70. By again insisting that Mr. Cook submit to a medical exam, NorDx violated the MHRA and discriminated against Plaintiff on the basis of his military service.

71. In addition, on the same day HR sent this letter to Mr. Cook, he received a final written warning corrective action from NorDx for productivity issues. Mr. Cook wrote on this March 2, 2015 corrective action form that he had been "singled out again" by his coworkers. Mr. Cook further explained: "Also remember I am working with my PCP and the VA about my medications, how my body reacts to them, and if I am going to need an accommodation in doing my job. Again I feel as if I am being singled out by someone who has no idea what is going on when they see me, they don't know about my pain levels, my medications, or anything within that subject that we have discussed time [and] time again."

72. Mr. Cook responded to HR's letters and Employee Health received the following

restrictions from his physician: "No prolonged bending: allow 8-10 minutes to stand as [sic] along as time allows to make correct bed position or find a stool. Limit up to 6 collections per hour during which time to allow for proper body mechanics."

73. None of the above information requested by NorDx pertained to Mr. Cook's diagnosis of PTSD or attendance.

74. On April 20, 2015, HR mailed Mr. Cook a letter with "**Ending Interactive Process**" in the subject line.

75. The "**Ending Interactive Process**" letter stated that: "At this time you are able to perform all the essential functions of your job – including meeting productivity standards – without an accommodation."

76. Defendants' April 20, 2015 letter is an admitted denial of Mr. Cook's request for an accommodation due to his known disabilities.

77. Defendants' April 20, 2015 letter ignores his record of a disability with the VA.

78. On May 8, 2015, NorDx again wrote Mr. Cook up with a corrective action for unscheduled absences, instead of asking him for more information about how his known disabilities may affect his attendance.

79. On June 9, 2015, NorDx again wrote Mr. Cook up with a corrective action for unscheduled absences, instead of asking him for more information about his known disabilities may affect his attendance.

80. On June 29, 2015, NorDx again wrote Mr. Cook up with a corrective action for "exceeding the attendance standard" and suspended him for 2 days.

81. The June 29, 2015 corrective actions stated that: "If you have a serious health condition that impacts your ability to work as scheduled, you may qualify for family medical

11

leave. Please call UNUM to obtain information about FML."

82. In addition to his own serious health conditions, Mr. Cook is a single father of a child with asthma.

83. Mr. Cook's young daughter sometimes requires prolonged breathing treatments for her asthma at unpredictable times, which made him late for work at NorDx on occasion.

84. By June of 2015, Mr. Cook had worked for Defendants for more than 12 months and was eligible for protected leave under NorDx's own policies as well as the FMLA and Maine FMLA.

85. Mr. Cook called UNUM to initiate a protected leave, but NorDx terminated him in the process.

86. On Wednesday, July 15, 2015, Mr. Cook called out because his daughter was sick.

87. Even though Mr. Cook spoke with the 3rd shift supervisor when he called out, NorDx accused him of being a "no call/no show" and terminated him effective July 16, 2015.

88. Defendants' termination of Mr. Cook's employment while he was in the process of requesting a family medical leave amounts to a willful and knowing violation of and interference with the Maine and Federal FMLA.

89. Defendants' termination of Mr. Cook's employment for failing to meet NorDx's attendance policy also amounts to an interference with his right to collect STD benefits for his disabilities, in violation of ERISA.

90. Throughout his employment with NorDx, Mr. Cook's performance met or exceeded the standards of his profession, yet he was scrutinized more closely and disciplined more harshly than similarly situated employees who were not veterans, and who were not

disabled.

91. After NorDx fired him, Mr. Cook applied for a medical assistant position with MMP, which is another division of MaineHealth.

92. MaineHealth rehired Mr. Cook to work at MMP, but fired him in November of 2015 for reasons that demonstrate disability discrimination similar to the allegations set forth above.

93. MaineHealth, by and through its two divisions MMP and NorDx, knowingly and willfully violated multiple state and federally protected rights of Plaintiff.

### COUNT I – DISCRIMINATION ON THE BASIS OF MILITARY SERVICE IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT
**(42 U.S.C. § 12101 *et seq*.)**

94. Plaintiff repeats the allegations contained in Paragraphs 1 through 93 of his Complaint as if fully set forth herein.

95. Mr. Cook has performed service in the U.S. Army, which is a uniformed service within the meaning of USERRA.

96. Defendants, by and through their agents, employees, HR representatives, and supervisors, treated Mr. Cook in a manner that reveals a discriminatory animus toward veterans.

97. For all the reasons set forth above, Defendants treated Mr. Cook differently than similarly situated disabled employees who did not serve in the military.

98. Defendant denied Plaintiff retention in employment, and his prior military service was a motivating factor in his termination.

99. If Plaintiff had a disability that was not connected to military service, Defendants would not have taken the same adverse actions against him, but instead would have engaged in a

genuine interactive process with him and accommodated him, instead of proceeding with corrective actions and termination.

WHEREFORE, Plaintiff Jason Cook requests that the Court enter judgment in his favor and against Defendants, and award him all damages available under USERRA, including lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

**COUNT II – INTERFERENCE WITH RIGHTS UNDER THE FMLA**
**(29 U.S.C. § 2601 *et seq*.)**

100. Plaintiff repeats the allegations contained in Paragraphs 1 through 99 of his Complaint as if fully set forth herein.

101. Beginning on May 12, 2015, Plaintiff was eligible and qualified for leave under the FMLA.

102. Plaintiff suffers from multiple serious health conditions within the meaning of the FMLA, as set forth above.

103. Plaintiff initiated the process of taking a family medical leave with Defendants' third-party benefits contractor, UNUM.

104. Defendants interfered with Plaintiff's rights under the FMLA by firing him for needing time off before he could get approved for FMLA leave.

105. Defendants failed to give Plaintiff any notice of his right to take full and/or intermittent leave under the FMLA.

106. Plaintiff did not receive the benefit of any FMLA leave, to which he was entitled and for which he was qualified.

107. Although Defendants knew that Plaintiff suffered from multiple serious health conditions under the FMLA, NorDx fired him before he was approved for FMLA leave.

108. Defendants recklessly, knowingly, and/or willfully interfered with Plaintiff's rights under the FMLA.

109. As a result of Defendants' violation of the FMLA, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jason Cook requests that the Court enter judgment in his favor and against Defendants, and award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT III – VIOLATION OF THE MAINE FMLA
**(26 M.R.S. § 843 *et seq*.)**

110. Plaintiff repeats the allegations contained in Paragraphs 1 through 109 as if fully stated herein.

111. For all the reasons stated in Count II above, unlawful interference with and violation of the Maine Family Medical Leave Requirements has occurred.

112. As a result of Defendants' violation of the Maine FMLA, Mr. Cook has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jason Cook requests that the Court enter judgment in his favor and against Defendants, and award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## **COUNT IV – VIOLATION OF THE MAINE HUMAN RIGHTS ACT**
### **(5 M.R.S. § 4571 *et seq.*)**

113. Plaintiff repeats the allegations contained in Paragraphs 1 through 112 of his Complaint as if fully set forth herein.

114. At all times herein relevant, Plaintiff was a qualified individual with a disability within the meaning of the MHRA.

115. At all times herein relevant, Plaintiff was qualified and able to perform the essential functions of his job with or without accommodations.

116. Plaintiff had a record of a disability.

117. Defendants regarded Plaintiff as disabled.

118. Defendants discriminated against Plaintiff on the basis of his known disability throughout his employment with MaineHealth, up to and including his termination from MMP in November of 2015.

119. Defendants violated the MHRA by failing to accommodate Mr. Cook and failing to engage in the interactive process with him.

120. Defendants violated the MHRA by subjecting Mr. Cook to undergo an unnecessary medical exam when he has a known record of a disability from the VA.

121. Defendants retaliated against Mr. Cook for making a request for an accommodation and reporting discrimination on the basis of his disability.

122. As a result of Defendants' discriminatory actions, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jason Cook requests that the Court enter judgment in his favor and against Defendants, and award him damages in the form of lost back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT V – VIOLATION OF ERISA SECTION 510
### (29 U.S.C. § 1001 *et seq.*)

123. Plaintiff repeats the allegations contained in Paragraphs 1 through 122 of his Complaint as if fully set forth herein.

124. At all times herein relevant, Plaintiff had the right and was eligible to enroll in, participate in, and collect benefits from MaineHealth's STD plan, which is an employee benefit plan within the meaning of ERISA.

125. Defendants discriminated against Plaintiff and interfered with his right to apply for STD benefits under the Plan.

126. Defendants took adverse action against Plaintiff by firing him before he could exercise his rights to collect STD under the Plan.

127. Defendants' actions were undertaken with the specific and overt intent to interfere with Plaintiff's attainment of STD benefits under the Plan, in violation of ERISA § 510.

WHEREFORE, Plaintiff Jason Cook requests that the Court enter judgment in his favor and against Defendants, and grant equitable relief in the form of restitution for lost benefits, an order enjoining Defendants from continuing to interfere with employee's rights under the STD Plan, attorney's fees, costs, and prejudgment interest, and such other and further relief as may be just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff Jason Cook hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.


Dated:  October 31, 2017 /s/ Laura H. White

_____
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
BERGEN & PARKINSON, LLC
62 Portland Rd., Suite 25
Kennebunk, ME 04043
(207) 985-7000
lwhite@bergenparkinson.com


/s/ *Courtney M. Hart*

_____
Courtney M. Hart, Bar No. 4127
*Attorney for Plaintiff*
BERGEN & PARKINSON, LLC
62 Portland Rd., Suite 25
Kennebunk, ME 04043
(207) 985-7000
chart@bergenparkinson.com